UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| NEYSHA CRUZ, individually and as Parent and Natural Guardian of O.F., <br><br> Plaintiff, <br><br> -against- <br><br> DAVID C. BANKS, et al., <br><br> Defendants. | Case No. 1:22-cv-09220 (JLR) <br><br> **OPINION AND ORDER** |

JENNIFER L. ROCHON, United States District Judge:

Neysha Cruz ("Cruz" or "Plaintiff") brings this action individually and on behalf of her child, O.F. (the "Student"), pursuant to the Individuals with Disabilities Education Act (the "IDEA"), 20 U.S.C. § 1400 *et seq.*, against the New York City Department of Education (the "DOE") and David C. Banks in his official capacity as DOE Chancellor (together with the DOE, "Defendants"). Cruz seeks judicial review and modification of the decision of a State Review Officer (the "SRO") with respect to two Individualized Education Programs (the "IEPs"), while Defendants ask the Court to affirm the SRO's decision. Now before the Court are the parties' cross-motions for summary judgment. For the following reasons, Defendants' motion is GRANTED and Plaintiff's motion is DENIED.

## BACKGROUND

### I. Factual Background

#### A. The Student

Cruz is the Student's parent. ECF No. 24 ("Def. RSOF") ¶ 1. The Student turned nineteen years old during the 2021-2022 school year. *Id.* ¶ 2. The Student has cerebral palsy, cortical visual impairment, a seizure disorder, and scoliosis; "he is nonverbal and non-

ambulatory and communicates through a variety of communication modes," ECF No. 27 ("Pl. RSOF") ¶ 2, such as vocalizing, body movements, assistive technology, and eye gazing, Def. RSOF ¶ 5.

The Student began attending the International Institute for the Brain ("iBrain") during the 2018-2019 school year. Pl. RSOF ¶ 3. Due to concerns about the COVID-19 pandemic, the Student did not attend school during the 2020-2021 school year until June 8, 2021, when he attended iBrain for approximately 15 days of the school year. Def. RSOF ¶¶ 6, 16. The Student continued to attend iBrain during the 2021-2022 school year. Id. ¶ 6.

**B. The IEPs**

1. iBrain May 15, 2020 IEP and Recommendations

On May 15, 2020, iBrain completed a private-school IEP for the Student for the 2020-2021 school year. Id. ¶ 7. The recommendations suggested:

> a 6:1:1 special education class; physical therapy ("PT") 1:1, 5x/week, 60-minute sessions, occupational therapy ("OT") 1:1, 5x/week, 60-minute sessions; speech and language therapy ("SLT") 1:1, 4x/week, 60-minute sessions, speech and language therapy ("SLT") group, 1x/week, 60-minute sessions; music therapy ("MT") 1:1, 2x/week, 60-minute sessions; vision education services ("VES") 1:1, 2x/week, 60-minute sessions; assistive technology services ("AT") 1x/week, 60-minute session; and parents counseling and training 1x/month, 60-minute session.

Id. ¶ 8.[1]

iBrain recommended music therapy services after its music therapist evaluated the Student and determined that he was "highly responsive to the techniques that are used in music therapy." Id. ¶ 10. It also recommended transportation services for the Student, including

---

[1] A 6:1:1 or 6:1+1 staffing ratio "means that for every six students, there is one teacher and one classroom paraprofessional." *F.B. v. N.Y.C. Dep't of Educ.*, 923 F. Supp. 2d 570, 574 n.2 (S.D.N.Y. 2013).

2

"busing with supervision provided by a nurse, air conditioning, a lift bus/wheelchair ramp, a wheelchair, and a limited travel time of 60 minutes." *Id.* ¶ 9.

    2.  The May 2020 IEP

On May 19, 2020, a Committee on Special Education (a "CSE") convened for the Student's annual review (the "May 2020 CSE") and developed a proposed public-school IEP for the Student, with a projected implementation date of June 3, 2020 (the "May 2020 IEP"). *Id.* ¶ 12. The May 2020 CSE found the Student eligible for special education and related services as a student with a traumatic brain injury and recommended a "12-month program in a 6:1+1 special class in a specialized school." *Id.* ¶ 13. The May 2020 CSE further recommended that the Student receive:

> an assistive technology dynamic display speech generating device ("SGD") among other assistive technology devices, two 60-minute sessions per week of individual assistive technology support, five 60-minute sessions per week of individual OT, five 60-minute sessions per week of individual PT, two 60-minute sessions per week of individual vision education services, one 60-minute session per month of parent counseling and training, five 60-minute sessions per week of individual speech-language therapy, along with the support of a full-time 1:1 health paraprofessional for activities of daily living, feeding, and safety, a full-time 1:1 school nurse, and supports for school personnel on behalf of the student.

*Id.* ¶ 14; *see id.* ¶ 24. The CSE also recommended that the Student receive "specialized transportation, which included transportation from the closest safe curb location to school, 1:1 nursing services, a lift bus, air conditioning, and a limited time travel of 60 minutes." *Id.* ¶ 15.

The DOE assigned the Student to the D75 Horan School for the 2020-2021 school year. *Id.* ¶ 24.

    3.  The June 2021 IEP and Unilateral Placement

On June 21, 2021, a CSE convened for the Student's annual review (the "June 2021 CSE") and to develop an IEP for the Student with a projected implementation date of July 5,

2021 (the "June 2021 IEP"). *Id.* ¶ 17. The June 2021 CSE again found the Student eligible for special education and related services and recommended a "12-month program in a 12:1+(3:1) special class in a specialized school." *Id.* ¶ 18.[2] The June 2021 CSE also recommended that the Student receive:

> an assistive technology dynamic display speech generating device ("SGD") among other assistive technology devices, 60 minutes of individual assistive technology support per week, five 60-minute sessions per week of individual OT, five 60-minute sessions per week of individual PT, two 60-minute sessions per week of individual vision education service, one 60-minute session per month of group parent counseling and training, four 60-minute sessions per week of individual speech-language therapy, one 60-minute session per week of group speech-language therapy, a full-time 1:1 health paraprofessional for activities of daily living, feeding, and safety, full-time 1:1 school nurse, and supports for school personnel.

*Id.* ¶ 19. The June 2021 CSE did not find music therapy necessary. *Id.* ¶ 21.

On June 23, 2021, Cruz rejected the proposed program and notified the DOE that she intended to place the Student at iBrain for the 2021-2022 school year and seek public funding for that placement. *Id.* ¶ 22. The following day, the DOE informed Cruz that the Student had been assigned to the D75 Horan School for the 2021-2022 school year. *Id.* ¶¶ 23-24. On June 30, 2021, Cruz nonetheless signed an enrollment contract with iBrain for services to be provided to the Student from July 7, 2021 to June 24, 2022. *Id.* ¶ 25.

### C. Underlying Proceedings

On July 6, 2021, Cruz filed a due process complaint, asserting that the Student was denied a free appropriate public education (a "FAPE") based on the May 2020 and June 2021

---

[2] The terms 12:1:4 classroom and 12:1+(3:1) classroom both refer to a classroom with twelve students, one teacher, and, for every three students, one paraprofessional. *See Melendez v. Banks*, No. 21-cv-01243 (MKB), 2023 WL 6283108, at *3 n.4 (E.D.N.Y. Sept. 26, 2023), *appeal docketed*, No. 23-7606 (2d Cir. Nov. 2, 2023).

4

IEPs, that iBrain was an appropriate unilateral placement for the Student, and that the equities supported full funding for the Student's 2020-2021 and 2021-2022 school-year costs at iBrain. *Id.* ¶ 26. Cruz requested direct payment of the cost of tuition at iBrain for the 2020-2021 and 2021-2022 school years and the costs of related services, nurse services, and a 1:1 paraprofessional. *Id.* ¶ 27.

1. The Impartial Hearing Officer's Decision

An Impartial Hearing Officer ("IHO") conducted an impartial hearing on the merits. *Id.* ¶ 28. The hearing began on September 15, 2021 and concluded on February 10, 2022 after five days of proceedings. *Id.*

On March 27, 2022, the IHO issued his findings of facts and decision, finding that the Student was denied a FAPE for the 2020-2021 and 2021-2022 school years. *Id.* ¶¶ 29-30; *see* ECF No. 1-1. The IHO found that although the May 2020 and June 2021 IEPs "could have provided [the Student] with a FAPE as drafted, the District failed to establish how [the D75 Horan School] could have implemented the extensive list of related services on a push-in/pull-out basis and the required hours of academic instruction during the course of a normal school day as opposed to an extended school day as was provided at the unilateral placement at iBrain." Def. RSOF ¶¶ 29-30 (quotation marks omitted). The IHO found that DOE "did not account for the required amount of academic instruction that a District school must legally provide, making its claims that it could accommodate all of the academics and related services recommendations mathematically impossible" without an extended school day. *Id.* ¶ 31 (quotation marks and citation omitted).

The IHO further concluded that the Student's unilateral placement at iBrain was appropriate, *id.* ¶ 32, and that the equities weighed in large part in favor of reimbursement to

5

Plaintiff, *id.* ¶¶ 33-34. Nevertheless, the IHO determined that the "costs the parent is seeking for iBrain for the 2021-2022 year are excessive, on an equitable basis." *Id.* ¶ 36. For the 2020-2021 school year, the IHO ordered full payment of the "base" and "supplemental" tuition and costs at iBrain for the Student's "two weeks of enrollment," *id.* ¶ 37, but denied the request for "additional nursing fees" sought for nursing during school hours since iBrain's base tuition included a school nurse, *id.* ¶ 38. For the 2021-2022 school year, the IHO ordered the DOE to pay base tuition at an amount reduced by $30,000 and the full costs of supplemental tuition; the IHO denied payment for private transportation services (but ordered the DOE to provide transportation for the Student between the Student's home and iBrain). *Id.* ¶ 39; Pl. RSOF ¶ 28.

On April 4, 2022, the IHO issued a "superseding" findings of fact and decision. Def. RSOF ¶ 40; ECF No. 1-2 ("SFOFD"). In the superseding decision, the IHO provided additional reasoning for certain findings and specified that the DOE's order to provide transportation included "transportation from the closest safe curb location to school, 1:1 nursing services, a lift bus, air conditioning, and limited travel time." Def. RSOF ¶ 41.

2. The State Review Officer's Decision

Cruz appealed the IHO's decision on March 27, 2022 to the New York State Education Department's Office of State Review. *Id.* ¶ 42. She argued that the IHO correctly found that the D75 Horan School could not implement the Student's IEPs, but that he erred in finding that the DOE's proposed IEPs, as written, provided the Student with a FAPE. *Id.* ¶ 43. The DOE cross-appealed, arguing that the IHO erred in finding that it did not offer the Student a FAPE during the 2020-2021 and the 2021-2022 school years. Pl. RSOF ¶ 30.

On July 5, 2022, the SRO issued a 40-page decision siding largely with the DOE. *See* Def. RSOF ¶¶ 44-45; Pl. RSOF ¶ 31; ECF No. 1-3 (the "SRO Decision" or "SRO Dec."). The

6

SRO "declined to disturb the IHO's finding that the special class placement recommendations contained in the student's May 2020 and June 2021 IEPs offered the Student a FAPE." Def. RSOF ¶¶ 48 (quotation marks and citation omitted); *see id.* ¶¶ 46, 55.  However, contrary to the IHO's decision, the SRO found that the D75 Horan School could implement the IEPs during the regular school day and that Cruz's challenges otherwise "were speculative and therefore could not form an appropriate basis for unilateral placement." *Id.* ¶ 47 (quotation marks and citation omitted).  Because the SRO determined that the DOE had offered the Student a FAPE for the 2020-2021 and 2021-2022 school years, the SRO declined to address the issues of whether iBrain was an appropriate placement for the Student or whether equitable considerations supported Cruz's request for relief.  SRO Dec. at 40.

## II. Procedural History

Cruz brought this action on October 27, 2022, ECF No. 1, and moved for summary judgment on March 20, 2023, ECF No. 16 ("Pl. Br.").  Defendants cross-moved for summary judgment and opposed Cruz's motion on May 26, 2023.  ECF No. 25 ("Def. Br.").  Cruz opposed Defendants' cross-motion and replied in further support of her motion on June 20, 2023.  ECF No. 26 ("Pl. Reply").  Defendants replied in further support of their motion on July 10, 2023.  ECF No. 28 ("Def. Reply").  The motions are now fully briefed.

## LEGAL STANDARD

"In a district court proceeding under the IDEA, the parties and the court typically style the decision as a ruling on a motion for summary judgment, but 'the procedure is in substance an appeal from an administrative determination, not a summary judgment motion.'" *Bd. of Educ. of Yorktown Cent. Sch. Dist. v. C.S.*, 990 F.3d 152, 165 (2d Cir. 2021) (quoting *M.H. v. N.Y.C. Dep't of Educ.*, 685 F.3d 217, 226 (2d Cir. 2012)).  "The district court therefore engages in an

independent review of the administrative record and makes a determination based on a preponderance of the evidence." *Id.* (brackets, quotation marks, and citation omitted).

In conducting this independent review, the court "must give due weight to the state administrative proceedings, mindful that the judiciary generally lacks the specialized knowledge and experience necessary to resolve persistent and difficult questions of educational policy." *Id.* (brackets and citation omitted). Where an IHO and SRO reach conflicting conclusions, the court "must defer to the SRO's decision on matters requiring educational expertise unless it concludes that the decision was inadequately reasoned, in which case a better-reasoned IHO opinion may be considered instead." *R.E. v. N.Y.C. Dep't of Educ.*, 694 F.3d 167, 189 (2d Cir. 2012). However, the court owes no deference to an SRO on issues of law. *See Lillbask ex rel. Mauclaire v. Conn. Dep't of Educ.*, 397 F.3d 77, 82 (2d Cir. 2005).

## DISCUSSION

### I. Statutory Framework

Congress enacted the IDEA "to ensure that all children with disabilities have available to them a free appropriate public education that emphasizes special education and related services designed to meet their unique needs." 20 U.S.C. § 1400(d)(1)(A); *accord M.H.*, 685 F.3d at 223. An adequate IEP must "be likely to produce progress, not regression, and must afford the student with an opportunity greater than mere trivial advancement," but "need not furnish every special service necessary to maximize each handicapped child's potential." *M.H.*, 685 F.3d at 224 (brackets, ellipses, quotation marks, and citations omitted).

"Under the IDEA, a parent has recourse to various formal and informal mechanisms to resolve disputes related to her child's education." *Montalvan v. Banks*, --- F. Supp. 3d ----, 2023 WL 8720296, at *4 n.7 (S.D.N.Y. Dec. 18, 2023). One such mechanism permits a parent to challenge any matter related to the state's provision of a FAPE by filing a "due process

8

complaint" with the state's educational agency. *See* 20 U.S.C. § 1415(b)(6)(A); *Montalvan*, 2023 WL 8720296, at *6. Such a complaint initiates an "administrative challenge unrelated to the concept of constitutional due process." *R.E.*, 694 F.3d at 175. In New York, if the parent's concerns cannot be resolved at a "[p]reliminary meeting," 20 U.S.C. § 1415(f)(1)(B)(i), the matter proceeds to a "due process hearing" before an IHO, *id.* § 1415(f)(1)(A); N.Y. Educ. Law § 4404(1)(a). The parent may then appeal an IHO's decision to the Office of State Review, where an SRO "conduct[s] an impartial review" of the IHO's "findings and decision." 20 U.S.C. § 1415(g)(2); N.Y. Educ. Law § 4404(2). The local school district bears the initial burden of establishing the validity of its IEP at a due process hearing. *R.E.*, 694 F.3d at 184 (citing N.Y. Educ. Law § 4404(1)(c)).[3] If the district "fails to carry this burden, the parents bear the burden of establishing the appropriateness of their private placement and that the equities favor them." *Id.* at 185.

Parents dissatisfied with their student's IEP may unilaterally place their student in a private school during the pendency of review proceedings and then seek tuition reimbursement from their school district, but they "do so at their own financial risk." *Florence Cnty. Sch. Dist. Four v. Carter ex rel. Carter*, 510 U.S. 7, 15 (1993) (citation omitted); *see* 20 U.S.C. § 1412(a)(10)(C). Such claims for tuition reimbursement are "governed by the *Burlington/Carter* test, which looks to (1) whether the school district's proposed plan will provide the child with a [FAPE]; (2) whether the parents' private placement is appropriate to the

---

[3] The Supreme Court and the Second Circuit have not resolved the question of "whether a state-imposed burden in an initial hearing also applies in a subsequent federal suit." *R.E.*, 694 F.3d at 185 n.2; *see C.F. ex rel. R.F. v. N.Y.C. Dep't of Educ.*, 746 F.3d 68, 76 n.6 (2d Cir. 2014). However, the Second Circuit has explained that it is not necessary to resolve that issue in cases where, as here, the SRO "concluded that the IEPs were proper, and the courts are bound to exhibit deference to that decision, [so] the burden of demonstrating that the respective Review Officers erred is properly understood to fall on the plaintiffs." *M.H.*, 685 F.3d at 225 n.3.

9

child's needs; and (3) a consideration of the equities." *C.F. ex rel. R.F. v. N.Y.C. Dep't of Educ.*, 746 F.3d 68, 76 (2d Cir. 2014). "The first two prongs of the test generally constitute a binary inquiry that determines whether or not relief is warranted, while the third enables a court to determine the appropriate amount of reimbursement, if any." *A.P. v. N.Y.C. Dep't of Educ.*, No. 22-2636, 2024 WL 763386, at *2 (2d Cir. Feb. 26, 2024) (summary order); *see Forest Grove Sch. Dist. v. T.A.*, 557 U.S. 230, 246 (2009) ("Parents are entitled to reimbursement *only* if a federal court concludes both that the public placement violated IDEA and the private school placement was proper under the [IDEA]." (quotation marks and citation omitted)).

## II. The Cross-Motions

Cruz seeks to reverse or modify the SRO's decision. Pl. Br. at 1. Specifically, she argues that the DOE did not offer the Student a FAPE for the 2020-2021 and 2021-2022 school years, *id.* at 8-20, that iBrain was an appropriate unilateral placement, *id.* at 20-21, and that the equities favor full tuition reimbursement, *id.* at 21-22. In their cross-motion, Defendants ask the Court to affirm the SRO's decision in its entirety. Def. Br. at 1. They argue that, because the DOE offered the Student a FAPE for the 2020-2021 and 2021-2022 school years, the Court need not consider whether unilateral placement at iBrain was appropriate and whether the equitable considerations favor funding. *Id.* at 25.

### A. The Decision of the SRO Merits Deference

As a threshold matter, the Court holds that it owes deference to the SRO Decision in this case. *See Gagliardo v. Arlington Cent. Sch. Dist.*, 489 F.3d 105, 113 (2d Cir. 2007) (federal courts should give "due weight" to an SRO's decision, "mindful that the judiciary generally lacks the specialized knowledge and experience necessary to resolve persistent and difficult questions of educational policy" (brackets, quotation marks, and citations omitted)). The SRO Decision is 40 pages, single-spaced, highly detailed, and well-reasoned; the SRO analyzed a

variety of documentary and testimonial evidence, including testimony from iBrain witnesses, DOE witnesses, the findings of the IHO, and evaluations and tests of the Student. *See generally* SRO Dec. "Deference is particularly appropriate when, as here, the [SRO's] review has been thorough and careful." *Walczak v. Fla. Union Free Sch. Dist.*, 142 F.3d 119, 129 (2d Cir. 1998); *see Zayas v. Banks*, No. 22-cv-07112 (KPF), 2024 WL 216761, at *6 (S.D.N.Y. Jan. 19, 2024) (deferring to SRO decision where the SRO "issued a 27-page single-spaced decision in which he carefully and thoroughly examined the record" (brackets and ellipsis omitted)). The Court thus proceeds to analyze the SRO Decision under the first prong of the *Burlington/Carter* test, giving due weight to its analysis on questions of educational policy.

### B. Whether the IEPs Provide the Student with a FAPE

Cruz argues that the DOE denied Student a FAPE for the 2020-2021 and 2021-2022 school years because (1) it failed to recommend music therapy, Pl. Br. at 16-18; (2) a 12:1:4 classroom is not appropriate for the Student's needs, *id.* at 8-12; (3) it failed to sufficiently evaluate the Student before recommending that classroom size in the June 2021 IEP, *id.* 18-19; (4) the Student's recommended school could not implement his IEPs as written without an extended school day, *id.* at 12-16; and (5) it did not recommend oxygen and ventilator equipment for his transportation services, *id.* at 19-20. Cruz seeks reimbursement for tuition and related services for Student's unilateral placement at iBrain during those school years. *Id.* at 23.

The Court will address each argument in turn.

1. Music Therapy

Cruz argues that the May 2020 and June 2021 IEPs, as written, denied the Student a FAPE because they did not include music therapy. *Id.* at 16-17.

Here, although the record reflects that music therapy may be beneficial for the Student, the record does not support the conclusion that the Student could not have a FAPE without it.

11

SRO Dec. at 31-33. After a thorough examination of the record, the SRO concluded that "music therapy at iBrain offered a different approach for addressing the same skills that were also being targeted by other related service providers and did not address a need that was otherwise neglected by the district's IEP." *Id*. at 33; *see id.* at 32. On this basis, the SRO found "no reason to disturb the IHO's finding that there was insufficient information to hold that music therapy was required to provide the student a FAPE." *Id.* at 33.

While "[the Student's] parents might prefer [the Student] to have music therapy, 'the IDEA guarantees only that students with disabilities are provided an appropriate education, not one that provides everything that might be thought desirable by loving parents.'" *N.K. v. N.Y.C. Dep't of Educ.*, 961 F. Supp. 2d 577, 592 (S.D.N.Y. 2013) (brackets omitted) (quoting *Bryant v. N.Y. State Educ. Dep't*, 692 F.2d 202, 215 (2d Cir. 2012)); *see id.* at 592-93 (agreeing with IHO and SRO that although the record demonstrated that music therapy could benefit student, it was not necessary to provide the student with a FAPE); *Zayas*, 2024 WL 216761, at *10-11 (affirming SRO's conclusion that failure to recommend music therapy did not amount to the denial of FAPE even if student may have benefited from music therapy). Here, both the IHO and SRO found that music therapy did not cover any skills not already targeted by other aspects of the Student's IEPs. *See* SRO Dec. at 33. "As long as the methodologies referenced in the IEP are appropriate to the student's needs, the omission of a particular methodology is not a procedural violation." *R.B. v. N.Y.C. Dep't of Educ.*, No. 12-cv-03763 (AJN), 2013 WL 5438605, at *11 (S.D.N.Y. Sept. 27, 2013) (brackets, quotation marks, and citation omitted) (affirming decision of SRO that a particular methodology, which the parents asserted was the "only" methodology that worked for the student, was not necessary where the DOE explained that other techniques could cover the same skills), *aff'd*, 589 F. App'x 572 (2d Cir. 2014)

(summary order). Thus, the Court defers to the well-reasoned decision of the SRO and holds that music therapy was not necessary to offer the Student a FAPE.

2. Class Size

Cruz also argues that the June 2021 IEP as written denied the Student a FAPE because a 12:1:4 classroom is not appropriate for the Student. Pl. Br. at 8-12. In particular, she argues that, according to New York regulations, a child with "highly intensive" management needs, such as the Student, must be placed in a classroom with no more than six students per teacher. *Id.* at 8 (citing N.Y. Comp. Codes R. & Regs. tit. 8 § 200.6(h)(4) ("Section 200.6(h)(4)")). The relevant New York regulation provides:

> (4) Special class size for students with disabilities. The maximum class size for those students whose special education needs consist primarily of the need for specialized instruction which can best be accomplished in a self-contained setting shall not exceed 15 students, or 12 students in a State-operated or State-supported school, except that:
>
> > (i) The maximum class size for special classes containing students whose management needs interfere with the instructional process, to the extent that an additional adult is needed within the classroom to assist in the instruction of such students, shall not exceed 12 students, with one or more supplementary school personnel assigned to each class during periods of instruction.
> >
> > (ii)
> >
> > > (a) The maximum class size for special classes containing students whose management needs are determined to be highly intensive, and requiring a high degree of individualized attention and intervention, shall not exceed six students, with one or more supplementary school personnel assigned to each class during periods of instruction.
> > >
> > > (b) The maximum class size for special classes containing students whose management needs are determined to be intensive, and requiring a significant degree of individualized attention and

13

> intervention, shall not exceed eight students, with one or more supplementary school personnel assigned to each class during periods of instruction.
>
> (iii) The maximum class size for those students with severe multiple disabilities, whose programs consist primarily of habilitation and treatment, shall not exceed 12 students. In addition to the teacher, the staff/student ratio shall be one staff person to three students. The additional staff may be teachers, supplementary school personnel and/or related service providers.

Section 200.6(h)(4). Cruz argues that only Section 200.6(h)(4)(ii)(a) applies to the Student as a child with "highly intensive" management needs. Pl. Br. 8-12. Defendants agree that the Student has "highly intensive" management needs, but argue that because he also has "severe multiple disabilities," he could be placed in a 12:1:4 classroom pursuant to Section 200.6(h)(4)(iii). Def. Reply at 5-7.

In *Carrillo v. New York City Department of Education*, No. 21-2639, 2023 WL 3162127 (2d Cir. May 1, 2023) (summary order), the Second Circuit considered and rejected the argument that a student with "highly intensive" management needs can be placed only in a 6:1:1 classroom. There, the DOE classified a non-verbal and non-ambulatory student as having "multiple disabilities" and recommended placement in a 12:1:4 classroom. *Id.* at *1. The plaintiffs objected to the DOE's proposed placement, unilaterally placed the student at iBrain, and filed a due process complaint arguing that the student required placement in a 6:1:1 classroom because the student had *both* "highly intensive" management needs and "severe multiple disabilities." *Id.* at *1, *3. The IHO, SRO, and district court all affirmed the DOE's recommended placement of the student in a 12:1:4 classroom as the appropriate placement for a student with "severe multiple disabilities." *Id.* at *3-4. The Second Circuit explained that the applicable regulations provided a "continuum of classroom options" and that the 12:1:4 configuration is the "most supportive classroom available." *Id.* at *3 (emphasis omitted). The

14

Second Circuit further explained that the plaintiffs' argument that a student with "highly intensive" management needs required a 6:1:1 classroom was "not supported by the plain language of the regulation . . . [because t]he needs of students described in the subparagraphs of § 200.6(h)(4) are not mutually exclusive." *Id*. Thus, the Second Circuit affirmed the IHO, SRO, and district court's analysis that placement in a 12:1:4 classroom was appropriate for the student.

Here, Cruz raises the same argument that the Second Circuit rejected in *Carrillo*. The SRO examined the hearing record, including testimony from iBrain's director and Cruz, and found that the Student's needs could be accommodated in either a 12:1:4 classroom or a 6:1:1 classroom, as the Student had both "highly intensive" management needs *and* "severe multiple disabilities." SRO Dec. at 27-31. Cruz does not dispute these underlying findings as to the severity of the Student's needs and disabilities. The Court therefore holds that here, as in *Carrillo*, the Student's recommended placement in a 12:1:4 classroom was appropriate. *See also Melendez*, 2023 WL 6283108, at *6-7 (rejecting identical argument from student's parents, and affirming decision of SRO that student's placement in 12:1:4 classroom was appropriate when the student had both "highly intensive" management needs and "severe multiple disabilities").

3. Sufficiency of the DOE's Evaluations

Cruz also argues that the June 2021 IEP was insufficient because the DOE failed to properly evaluate the Student before changing the classroom size in his IEP from 6:1:1 in the 2020-2021 school year to 12:1:4 in the 2021-2022 school year. Pl. Br. at 18-19.

To develop an IEP, a CSE "shall review existing evaluation data on the child, including (i) evaluations and information provided by the parents of the child; (ii) current classroom-based, local, or State assessments, and classroom-based observations; and (iii) observations by teachers and related services providers; and on the basis of that review, and input from the child's parents,

identify what additional data, if any, are needed." 20 U.S.C. § 1414(c)(1)(A)-(B).  The IDEA "does not compel a school district to perform every sort of test that would arguably be helpful before devising an IEP." *D.J. v. N.Y.C. Dep't of Educ.*, No. 12-cv-07009 (PAC), 2013 WL 4400689, at *4 (S.D.N.Y. Aug. 15, 2013) (quoting *Mackey v. Bd. of Educ. for Arlington Cent. Sch. Dist.*, 373 F. Supp. 2d 292, 299 (S.D.N.Y. 2005)).

Here, the SRO addressed the sufficiency of the DOE's evaluation in developing the May 2020 and June 2021 IEPs.  *See* SRO Dec. at 22-24.  The SRO explained that, in formulating the June 2021 IEP, "the CSE considered the previous IEP (May 2020), an assistive technology evaluation, a social history which was updated at the meeting, a psychoeducational evaluation, and teacher and related service reports," multiple assessments used to evaluate the Student on June 2, 2021, assessments of the Student's fine motor skills, an evaluation of the Student's feeding based on a feeding and swallowing checklist, and more.  *Id.* at 23.  Further, the SRO explained that "[b]oth the director of special education at iBrain and the district school psychologist testified that no additional evaluations were requested."  *Id.*  Thus, the SRO concluded that "[t]he parent's argument that the district never conducted its own evaluations to support its recommendation for a larger classroom for the student, a 12:1+(3:1) special class, for the 2021-22 school year is without merit."  *Id.* at 24.

Nothing in the IDEA requires that new formal evaluations be conducted for every student before any single change in an IEP.  Here, the DOE had "extensive documentation and verbal input that the CSE members used to formulate the Student's IEP[, which] provided the DOE with more than enough current information to assess accurately the Student's skill levels," *D.B. v. N.Y.C. Dep't of Educ.*, 966 F. Supp. 2d 315, 331 (S.D.N.Y. 2013), and the SRO's finding that the evaluated information was sufficient warrants deference.  Moreover, the Court has already found

that the challenged recommendation – that is, the June 2021 IEP's proposed class size for the Student – was appropriate as the "most supportive classroom environment contemplated by the applicable New York regulations." *Carrillo*, 2023 WL 3162127, at *1. The Court thus affirms the SRO's well-reasoned and detailed finding that the DOE sufficiently evaluated the Student before formulating the June 2021 IEP.

4.   Whether the D75 Horan School Could Implement the IEPs

Cruz also contends that both the May 2020 and the June 2021 IEPs denied the Student a FAPE because the D75 Horan School, the school the DOE assigned the Student to attend for the 2020-2021 and 2021-2022 school years, did not offer extended school days and therefore could not implement the Student's IEPs.  Pl. Br. at 12-16.

"Speculation that the school district will not adequately adhere to the IEP is not an appropriate basis for unilateral placement." *R.E.*, 694 F.3d at 195; *see R.B. ex rel. D.B. v. N.Y.C. Dep't of Educ.*, 603 F. App'x 36, 40 (2d Cir. 2015) (summary order) (same); *R.B. v. N.Y.C. Dep't of Educ.*, 589 F. App'x 572, 576 (2d Cir. 2014) (summary order) (same).  However, not "all prospective challenges to a proposed placement school's capacity to implement a child's IEP" are impermissible.  *M.O. v. N.Y.C. Dep't of Educ.*, 793 F.3d 236, 244 (2d Cir. 2015); *see id.* at 244-45 (explaining that "[t]o conclude otherwise would require parents to send their children to a facially deficient placement school prior to challenging that school's capacity to implement their child's IEP, which is antithetical to the IDEA's reimbursement process" (brackets, quotation marks, and citation omitted)).  The Second Circuit has explained:

> While it is speculative to conclude that a school with the capacity to implement a given student's IEP will simply fail to adhere to that plan's mandates, it is not speculative to find that an IEP cannot be implemented at a proposed school that lacks the services required by the IEP.  For example, it is not speculative to conclude that an IEP recommending a seafood-free environment, for a child

17

> with a life threatening seafood allergy, could not be implemented at a proposed school that was not seafood free. Nor is it speculative to conclude that an IEP recommending one-on-one occupational therapy, outside of the classroom, could not be implemented at a school that provided only in-class occupational therapy in a group setting.

*Id.* at 244 (citations omitted). For a prospective challenge to be successful, it must actually be "tethered to the IEP" and not based on "mere speculation." *Y.F. v. N.Y.C. Dep't of Educ.*, 659 F. App'x 3, 6 (2d Cir. 2016) (summary order).

Here, the IHO found that although the May 2020 and June 2021 IEPs as written would provide the Student with a FAPE, the Student's assigned school could not implement the IEPs because that school did not offer an extended school day. SFOFD at 13-15. The SRO reversed the IHO's findings on this issue. SRO Dec. at 35-40. The SRO explained that "[o]verall, the parent's claims that the assigned school could not implement the [S]tudent's IEPs as written were speculative and therefore could not form an appropriate basis for unilateral placement. However, . . . to some extent, the parent's assertions go to the assigned school's capacity to implement the specific elements of the IEPs at issue." *Id.* at 37 (quotation marks omitted). The SRO then addressed those specific assertions in detail, conducting a thorough review of the record. *Id.* at 37-41. The SRO explained that the IHO's finding that it was "mathematically impossible" for the D75 Horan School to implement the IEPs was based on the IHO's erroneous analysis of a New York State regulation. *Id.* at 37. Notably, Cruz does not dispute the SRO's interpretation of the regulation. *See generally* Pl. Br.; Pl. Reply. The SRO then analyzed the applicable regulations, the IEPs, testimony of DOE witnesses, and concluded that "the IHO erred in determining that it would be mathematically impossible to so implement the [S]tudent's entire program." *Id.* at 39.

18

Given this, Plaintiff's challenges to the ability of the D75 Horan School to implement the IEPs were impermissibly speculative and thus cannot be a proper basis for unilateral placement. *See R.E.*, 694 F.3d at 195. To the extent that Cruz challenges the actual capability of the D75 Horan School to implement the IEPs, the Court defers to the SRO's well-reasoned and particularly thorough decision, which relied on testimony from DOE witnesses that the D75 Horan School could have implemented the IEPs as written. SRO Dec. at 35-41; *see J.W. v. N.Y.C. Dep't of Educ.*, 95 F. Supp. 3d 592, 601 (S.D.N.Y. 2015) (courts generally should defer to well-reasoned decision of an SRO where the decisions of an IHO and an SRO conflict); *R.B. v. N.Y.C. Dep't of Educ.*, 15 F. Supp. 3d 421, 435 (S.D.N.Y. 2014) (affirming well-reasoned decision of SRO which denied parent's prospective challenge regarding assigned public school's ability to implement IEP), *aff'd*, 603 F. App'x 36 (2d Cir. 2015). Thus, the DOE did not deny the Student a FAPE in the 2020-2021 and 2021-2022 school years.

5. Oxygen and Ventilator Equipment in the Student's Transportation

Cruz argues that "Defendants also failed to recognize the need for an oxygen tank and ventilator as a necessary service in the transportation of [the Student] to and from school." Pl. Br. at 19. She states that the Student "has a chronic lung disease/asthma, and his nursing diagnosis states that he has ineffective airway clearance associated with chronic inflammation causing bronchoconstriction and excessive mucus production. The . . . May 2020 IEP indicated that [the Student] had asthma and took medication, and used oxygen when needed." *Id.*

Here, both the IHO and SRO found that there was "no evidence in the hearing record indicating that the [S]tudent required access to a ventilator to address his asthma and insufficient evidence to find that the [S]tudent required oxygen as a special transportation accommodation." SRO Dec. at 35 (quotation marks omitted). Thus, the SRO agreed with the IHO that "[g]iven the

19

other transportation accommodations recommended in the [S]tudent's IEPs, most specifically the 1:1 nursing support for the student, . . . the IEPs adequately provided for the student's medical needs with respect to asthma in the special transportation recommendations." *Id.* Here, too, Cruz provides no evidence that the Student requires access to a ventilator and oxygen during transportation services. *See generally* Pl. Br.; Pl. Reply at 18-19. The Court sees no legal or factual basis to disturb the findings of the IHO and the SRO as to transportation services.

### C. Other Considerations

Because the Court affirms the SRO's findings that the DOE offered the Student a FAPE during the 2020-2021 and 2021-2022 school years, the Court need not, and does not, consider the other two prongs of the *Burlington/Carter* test. *See e.g.*, *D.J.*, 2013 WL 4400689, at *6 (explaining that after affirming SRO's decision as to appropriateness of school district's IEP and the student's recommended placement, "it is not necessary for the Court to consider the appropriateness of enrolling [the Student] at [the unilateral placement] or whether the equities favor reimbursement").

## CONCLUSION

For the foregoing reasons, the Court GRANTS Defendants' motion and DENIES Plaintiff's motion. The SRO's decision is AFFIRMED. The Clerk of Court is directed to terminate the motions pending at ECF Nos. 15 and 22, enter judgment, and close the case.

Dated: March 27, 2024
New York, New York

SO ORDERED.

*Jennifer Rochon*
JENNIFER L. ROCHON
United States District Judge